**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4312-18T1

1 RELIABLE TRANSPORTATION,
INC.,

     Plaintiff-Appellant,

v.

TRADER JOE'S COMPANY, INC.,
WORLD CLASS DISTRIBUTION,
INC., and NFI INDUSTRIES, INC.,

     Defendants-Respondents.

_____

Submitted April 27, 2020 – Decided July 27, 2020

Before Judges Fasciale and Rothstadt.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-8030-17.

Jeffrey C. Mason, attorney for appellant.

Gibbons PC, attorneys for respondents Trader Joe's Company, Inc., and World Class Distribution, Inc. (Howard D. Geneslaw and Jonathan Steven Liss, of counsel and on the brief; Charlotte M. Howells, on the brief).

Montgomery Mc Cracken Walker & Rhoads, attorney for respondent NFI Industries, Inc. (John J. Levy and Jack Hagerty, on the brief).

PER CURIAM

Plaintiff 1 Reliable Transportation, Inc. appeals from the Law Division's May 20, 2019 order denying its motion for leave to amend its initial complaint and granting defendants' Trader Joe's Company (Trader Joe's), and World Class Distribution, Inc. (World Class), motion to dismiss its complaint with prejudice. The motion judge entered the order after she concluded that plaintiff's complaint and its proposed amended complaint did not adequately plead malice as an element of plaintiff's claims of tortious interference with contract and tortious interference with prospective economic advantage.

On appeal, plaintiff argues that the motion judge erred because it sufficiently pled malice, a required element of tortious interference with contract and tortious interference with prospective economic advantage, and plaintiff sufficiently pled that it was in pursuit of prospective business. Moreover, plaintiff argues that denying it the opportunity to amend its complaint gave rise to a miscarriage of justice. We affirm substantially for the reasons stated by the motion judge.

In November 2017 plaintiff filed its complaint against defendants alleging tortious interference with contract, tortious interference with prospective economic advantage, civil conspiracy, and affiliate liability. We accept the facts as pled by plaintiff in its complaint. See Nostrame v. Santiago, 213 N.J. 109, 127 (2013) (reiterating the well-established standard that on a motion to dismiss the facts alleged in the complaint must be accepted and accorded a liberal reading to ascertain if a cause of action is "'suggested' by the facts" (quoting Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989))).

According to the complaint, plaintiff is "engaged in the business of trucking and supply chain logistics services." Trader Joe's "is a national grocery store chain which operates its own distribution and food preparation facilities" through World Class, a subsidiary of Trader Joe's. Neither of those entities are plaintiff's competitors. Trader Joe's, through World Class, operated a 150 loading-bay warehouse distribution and food preparation facility in Nazareth, Pennsylvania to supply Trader Joe's grocery stores in New Jersey. Defendant NFI Industries, Inc. (NFI) "is engaged in the business of trucking and supply chain logistics services and distribution facilities management." According to

plaintiff, NFI[1] "managed the distribution facility and . . . provided trucking services at the distribution facility for Trader Joe's . . . as [its] 'in house' transport carrier."

Plaintiff alleged that it had an agreement with Bagel Boy, Inc. (Bagel Boy) to deliver that company's products to the distribution facility and that plaintiff expanded its trucking fleet and distribution capabilities in order to meet Bagel Boy's trucking demands. According to the complaint, on November 1, 2017, defendants "maliciously, intentionally and wrongfully interfered" with plaintiff's contract with Bagel Boy by both directing that Bagel Boy use NFI rather than plaintiff as its transport carrier and by refusing to allow plaintiff's trucks to deliver products to the distribution facility.

In response to the complaint, Trader Joe's and World Class moved to dismiss it under Rule 4:6-2(e) for failure to state a claim upon which relief could be granted. In support of their motion, they argued that both tortious interference claims required allegations of malicious conduct that plaintiff failed to allege. They also contended that plaintiff could not prove tortious interference with prospective economic advantage because plaintiff failed to

---

[1] According to plaintiff's appellate brief, NFI is "a nominal party, who appeared but did not answer, based upon mutual agreement of counsel."

specify an interfered with economic advantage. Plaintiff argued that while Trader Joe's was allowed to have a preferred supplier, more discovery was needed to determine whether defendants maliciously barred Bagel Boy from using plaintiff for trucking services.

After considering the parties' written submissions and oral arguments, on March 9, 2018, the motion judge granted the motion to dismiss without prejudice. The judge found that plaintiff failed to sufficiently allege malice and that as to the tortious inference with prospective economic advantage, plaintiff failed to allege a specific economic expectancy other than the contract between plaintiff and Bagel Boy. The judge entered an order that day dismissing plaintiff's complaint, stating "it is of course without prejudice because . . . if the plaintiff does have other facts it can bring to bear it can file a more specific complaint that would survive the motion to dismiss on the basis on which this was granted." The matter then proceeded to discovery as to plaintiff's remaining claim against NFI.

Almost a year later, and after the close of discovery and the assignment of a trial date, on January 22, 2019, plaintiff filed a motion to amend its complaint to reassert its original claims against Trader Joe's and World Class based upon new allegations set forth in a proposed amended complaint that also

omitted the civil conspiracy and affiliate liability claims, but added a claim for breach of contract. Plaintiff's new allegations related to an accident that occurred in July 2015 involving one of plaintiff's delivery trucks at the distribution facility.

Plaintiff stated in the proposed amended complaint that when its president learned about the accident, he traveled to the distribution center, and was falsely advised that no accident had occurred or that there was no accident report. However, in 2017, after an employee of Trader Joe's and World Class filed a personal injury complaint against plaintiff, its truck driver, and all defendants to this action, plaintiff learned that the accident occurred and that World Class had prepared a contemporaneous accident report. According to plaintiff's counsel's supporting certification, "the misconduct of defendants in their dealing with [p]laintiff" about the accident supported plaintiff's claim for tortious interference.

The proposed amended complaint realleged that Trader Joe's and World Class's notifying Bagel Boy that it was to use NFI for its trucking needs, rather than plaintiff, and barring it from the distribution center was "intentional, malicious and unjustified." As for its breach of contract claim, plaintiff alleged that it, Trader Joe's, and World Class "had an agreement, express and implied,

that gave [p]laintiff the right to make deliveries to the facility on behalf of suppliers" to Trader Joe's.

Trader Joe's and World Class opposed plaintiff's motion to amend and filed a cross-motion to dismiss plaintiff's complaint, arguing that the proposed amendment still did not cure the deficiencies found by the motion judge in her earlier decision. Plaintiff filed a supplemental certification in further support of its motion to amend and in opposition to the motion to dismiss, arguing that malice was established by defendants "falsely represent[ing] . . . in July, 2015, that an accident . . . did not occur" and that defendants "did not have any records or information relative to an accident[, but] it was later discovered [they] prepared contemporaneous reports and witness statements about [the] accident."

After considering the parties submissions and oral arguments, on May 20, 2019, the motion judge denied plaintiff's motion for leave to amend and granted the motion to dismiss with prejudice. As to NFI, the judge acknowledged that plaintiff "consented to including defendant NFI in this final order of dismissal with prejudice." Before entering the order, the judge placed her reasons on the record.

According to the motion judge, plaintiff's new allegations relating to the July 2015 accident did "not cure the deficiency of the prior complaint in that

they fail[ed] to provide a sufficient allegation of malice." The judge also found that plaintiff's allegations about breach of contract were not sufficient to state the existence of a contract between plaintiff and defendants.

The motion judge also addressed the delay in plaintiff's attempt to file an amended complaint, which plaintiff attributed to a "lag in discovery" in the personal injury case, by noting it was "significant to the court," especially because "[t]here was no action taken until after the discovery end date against [NFI] and the trial date [being assigned], and now ultimately this motion to amend filed about a year after the dismissal." According to the judge, although she was not making a finding about prejudice, she stated it was "quite likely given the period of delay here that prejudice should be assumed." This appeal followed.

On appeal, plaintiff specifically argues that the motion judge improperly dismissed its complaint under the holding in Printing Mart-Morristown, 116 N.J. at 746, because the complaint was not "examined with liberality and indulgence." Moreover, plaintiff avers that it adequately pled malice, "mean[ing] that the [alleged] interference was inflicted intentionally and without justification or excuse," and "sufficiently alleg[ed] that plaintiff was in pursuit of business" to support its "claim for interference with prospective economic

advantage." In addition, plaintiff argues the motion judge's order constituted a "miscarriage of justice" because the dismissal of the "initial complaint was contrary to [the judge's] decision . . . with respect to [p]laintiff's time to refile a complaint," in any event allowing it to amend would not have caused defendants "undue prejudice," and the order should have been entered in the "interest of justice." We find no merit to these contentions.[2]

We "review[] de novo [a motion judge's] determination of [a] motion to dismiss under Rule 4:6-2(e). [In doing so, we] owe[] no deference to the [motion judge's] legal conclusions." Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 108 (2019) (citation omitted). In our review, we "apply[] the same standard under Rule 4:6-2(e) that governed the motion [judge,]" Wreden v. Township of Lafayette, 436 N.J. Super. 117, 124 (App. Div. 2014), that is, whether the pleadings even "suggest[]" a basis for the requested relief, Printing Mart-Morristown, 116 N.J. at 746 (quoting Velantzas v. Colgate-Palmolive Co., 109 N.J. 189, 192 (1988)).

---

[2] Plaintiff has not briefed its breach of contract claim on appeal. Therefore, we deem any contention that the claim was wrongfully dismissed to have been waived. See Pressler & Verniero, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2020) ("It is, of course, clear that an issue not briefed is deemed waived."); see also Gormley v. Wood-El, 218 N.J. 72, 95 n.8 (2014).

As a reviewing court, we assess only the legal sufficiency of the claim. Sickles v. Cabot Corp., 379 N.J. Super. 100, 106 (App. Div. 2005). Consequently, "[a]t this preliminary stage of the litigation [we are] not concerned with the ability of plaintiffs to prove the allegation contained in the complaint." Printing Mart-Morristown, 116 N.J. at 746. Rather, we accept the factual allegations as true, Sickles, 379 N.J. Super. at 106, and "search[] the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim." Printing Mart-Morristown, 116 N.J. at 746 (quoting Di Cristofaro v. Laurel Grove Mem'l Park, 43 N.J. Super. 244, 252 (App. Div. 1957)). "However, we have also cautioned that legal sufficiency requires allegation of all the facts that the cause of action requires." Cornett v. Johnson & Johnson, 414 N.J. Super. 365, 385 (App. Div. 2010), aff'd as modified, 211 N.J. 362 (2012). In the absence of such allegations, the claim must be dismissed. Ibid.

A motion to dismiss for failure to state a claim must be denied if, giving plaintiff the benefit of all his allegations and all favorable inferences, a claim has been established. R. 4:6-2(e); see also Banco Popular N. Am. v. Gandi, 184 N.J. 161, 165 (2005). "A complaint should be dismissed for failure to state a claim pursuant to Rule 4:6-2(e) only if 'the factual allegations are palpably

insufficient to support a claim upon which relief can be granted.'" Frederick v. Smith, 416 N.J. Super. 594, 597 (App. Div. 2010) (quoting Rieder v. State Dep't of Transp., 221 N.J. Super. 547, 552 (App. Div. 1987)). "[P]leadings reciting mere conclusions without facts and reliance on subsequent discovery do not justify a lawsuit," and warrant dismissal. Glass v. Suburban Restoration Co., 317 N.J. Super. 574, 582 (App. Div. 1998).

When a complaint is dismissed under the Rule, leave to amend should be granted unless "the non-moving party will be prejudiced, [or] whether granting the amendment would nonetheless be futile." Notte v. Merchs. Mut. Ins., 185 N.J. 490, 501 (2006); see also Bustamante v. Borough of Paramus, 413 N.J. Super. 276, 298 (App. Div. 2010) (stating the amendment should be allowed unless undue prejudice would result or unless the amendment would be futile). "[C]ourts are free to refuse leave to amend when the newly asserted claim is not sustainable as a matter of law." Notte, 185 N.J. at 501 (quoting Interchange State Bank v. Rinaldi, 303 N.J. Super. 239, 256-57 (App. Div. 1997)). "In other words, 'there is no point to permitting the filing of an amended pleading when a subsequent motion to dismiss must be granted.'" Webb v. Witt, 379 N.J. Super. 18, 29 (App. Div. 2005) (quoting Interchange State Bank, 303 N.J. Super. at 256-57).

A-4312-18T1

Applying those guiding principles to our de novo review, we conclude the motion judge correctly determined that plaintiff's original complaint and its proposed amended complaint failed to adequately allege malice as an element of plaintiff's claims. "Whether the tort is denominated as an intentional interference with contractual advantage, or future economic advantage, the import is the same." Jenkins v. Region Nine Hous. Corp., 306 N.J. Super. 258, 265 (App. Div. 1997). Each claim requires as an element of proof that the interference was malicious. See DiMaria Constr., Inc. v. Interarch, 351 N.J. Super. 558, 567 (App. Div. 2001) (stating the elements of a claim for "[t]he tort of interference with a business relation or contract"), aff'd o.b., 172 N.J. 182 (2002); Nostrame, 213 N.J. at 122 (stating the elements of a claim for tortious interference with prospective economic advantage). "[I]n any action based on tortious interference . . . [the] interference [must] be malicious." Kopp, Inc. v. United Techs., Inc., 223 N.J. Super. 548, 559 (App. Div. 1988). Although these torts are separate causes of action, both have as their focus the means of interference. Nostrame, 213 N.J. at 121-22. To state a claim for either tort, the plaintiff must show that the interfering acts were intentional and improper. Ibid.

Proof that a party acted only "'to advance [its] own interest and financial position' does not establish the necessary malice or wrongful conduct." Dello

Russo v. Nagel, 358 N.J. Super. 254, 268 (App. Div. 2003). For example, when a business targets its competitor's customers, it exercises a valid business judgment and that alone does not constitute tortious interference with prospective economic advantage. Ibid. In order to establish malice, a plaintiff must demonstrate the defendant's "conduct was [not] sanctioned by the 'rules of the game,' for where a plaintiff's loss of business is merely the incident of healthy competition, there is no compensable tort injury." Lamorte Burns & Co. v. Walters, 167 N.J. 285, 306 (2001) (quoting Ideal Dairy Farms, Inc. v. Farmland Dairy Farms, Inc., 282 N.J. Super. 140, 199 (App. Div. 1995)).

Significantly, an act that is done in the exercise of an equal or superior right cannot support a claim of tortious interference. A party's exercise of a right "constitute[s] ample justification for its action and cannot result in the imposition of tort liability." Kopp, Inc., 223 N.J. Super. at 560 (quoting Levin v. Kuhn Loeb & Co., 174 N.J. Super. 560, 574 (App. Div. 1980)). A "[w]rongful act connotes any act which will, in the ordinary course, infringe upon the rights of another to his damage, except and unless it be done in the exercise of an equal or superior right." Ibid. (alteration in original) (quoting Kurtz v. Oremland, 33 N.J. Super. 443, 455 (Ch. Div. 1954)).

Plaintiff's initial complaint, as the motion judge found, never alleged any malicious acts by defendants. Although no explanation was provided for the alleged malicious acts in the original complaint, the proposed amended complaint relied upon the July 2015 accident as a reason for the barring of plaintiff from the distribution center and telling Bagel Boy to use NFI rather than plaintiff to deliver goods. These allegations were insufficient to adequately plead that defendants' conduct was malicious because they merely claimed that defendants, with whom plaintiff had no contractual relationship, but who owned and operated the distribution center, asserted their right to dictate who could come upon their premises. Ironically, the allegations about the July 2015 accident, if true, in fact justified the decision to bar plaintiff from the facility, defeating any claim that the action was not justified. Trader Joe's and World Class had the right to dictate whether plaintiff could deliver to the distribution center, regardless of its impact on plaintiff's relationship with Bagel Boy.

Contrary to plaintiff's argument, even if plaintiff adequately pled malice, it still did not assert a "fundament of a cause of action," Printing Mart-Morristown, 116 N.J. at 746, because its complaint did not sufficiently allege it was in pursuit of future business. "A complaint based on tortious interference must allege facts that show some protectable right—a prospective economic or

contractual relationship.  Although the right need not equate with that found in an enforceable contract, there must be allegations of fact giving rise to some 'reasonable expectation of economic advantage.'"  Id. at 751 (quoting Harris v. Perl, 41 N.J. 455, 462 (1964)).  A complaint for tortious interference with a prospective economic advantage requires a "demonstrat[ion] that a plaintiff was in 'pursuit' of business" and that defendants interfered with those potential relationships.  Ibid.

Plaintiff's complaint alleged only that it "expanded its fleet and facilities to meet the trucking needs of Bagel Boy and pursued and developed other business and agreements for carrier service to and from the distribution facility, emanating from the Bagel Boy contract."  Further, plaintiff alleged defendants "knew of [p]laintiff's contract with Bagel Boy and other suppliers."  Plaintiff alleged this conduct was "intentional, malicious and unjustified an intended to interfere with Plaintiff's contract with Bagel Boy and other customers of [p]laintiff."  Last, plaintiff alleged that

> but for [d]efendants' wrongful interference [p]laintiff would have continued to receive the economic benefits of its contract with Bagel Boy and the network of other customers and suppliers that [p]laintiff developed and was pursuing from its contract with Bagel Boy, and [p]laintiff had a reasonable expectation that it would continue to receive economic advantage from relationships.

A-4312-18T1

These allegations do not include any of the specific potential business relationships with which defendant allegedly interfered. Plaintiff's references to "other suppliers," and plaintiff's alleged development of "other business and agreements" are simply vague conclusory statements offered to hint at a possible cause of action. Moreover, plaintiff's conclusory allegation that it had a "reasonable expectation that it would continue to receive economic advantage" from any of those business relationships is similarly hollow. See Printing Mart-Morristown, 116 N.J. at 752 (stating it is fundamental to a cause of action for tortious interference with a prospective economic relationship that claims are "directed" at defendants not parties to the relationship).

We turn to plaintiff's final argument that because it filed its motion to amend within the statute of limitations, the delay in filing its motion nearly one year after its initial complaint was dismissed was immaterial. We disagree.

At the outset, we reject the premise for plaintiff's contention that the motion judge relied upon the delay in denying the motion to amend or that she ruled in the earlier motion to dismiss that a future motion to amend would be granted so long as it was filed before the expiration of the applicable statute of limitations. As noted above, the judge denied the earlier motion because plaintiff did not adequately plead malice and made clear that a later motion to

amend, if made, not only had to be timely, but also had to be supported by new allegations that "would survive [a] motion to dismiss on the basis that [the earlier motion] was granted." Plaintiff did not satisfy the latter requirement.

We discern no abuse in the motion judge's discretion in her decision to deny the proposed amendment. Motions for leave to amend should be granted liberally, but the decision "always rests in the [judge's] sound discretion." Notte, 185 N.J. at 501 (quoting Kernan v. One Washington Park Urban Renewal Assocs., 154 N.J. 437, 456-57 (1998)). Although motions for leave to amend should be decided "without consideration of the ultimate merits of the amendment," the judge must consider "the factual situation existing at the time [the] motion is made." Ibid. (quoting Interchange State Bank, 303 N.J. Super. at 256). A motion to amend is properly denied where allowing the amendment would unduly protract the litigation, see Pressler & Verniero, Current N.J. Court Rules, cmt. 2.2.1 on R. 4:9-1 (2020), or where, as here, to allow the amendment would have been futile because the proposed pleading still failed to assert a claim upon which relief could be granted. See Webb, 379 N.J. Super. at 28. ("A motion for leave should be decided pursuant to the same standard as a motion to dismiss for failure to state a claim.").

The fact that the motion judge considered plaintiff's delay in filing its motion to be "significant," did form the basis for her denial of the relief sought by plaintiff. Although the judge found there was "no satisfactory explanation offered for why the motion to amend was [not] filed until after such a long period of time, including the issuance of a trial date in this matter," her order was based upon the futility of allowing the proposed amendment. As already discussed, we have no cause to disturb her decision.[3]

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

---

[3] Although we do not address the merits of plaintiff's arguments about the delay, even if the judge relied on the delay as the basis for her decision, we would still affirm the result based upon the futility of the proposed amendment, as "appeals are taken from orders and judgments and not from opinions, oral decisions, informal written decisions, or reasons given for the ultimate conclusion," Do-Wop Corp. v. City of Rahway, 168 N.J. 191, 199 (2001).